UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YUDENIS MENDEZ-PRADES,<br><br>Petitioner(s),<br>v.<br><br>BRUCE SCOTT,<br><br>Respondent(s). | CASE NO. C26-2571-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner filed a petition for a writ of habeas corpus, asserting that his re-detention by Immigration and Customs Enforcement ("ICE") violated his federal statutory, regulatory, and constitutional rights. Dkt No. 4. The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 4, 10, 16. For the reasons stated below, the Court will grant Petitioner's habeas petition.

## I. BACKGROUND

Petitioner Yudenis Mendez-Prades, a native and citizen of Cuba, entered the United States without inspection or admission near Key West, Florida, in August 2022. Dkt. No. 11 ¶¶ 3–4. United States Border Patrol encountered, briefly detained, and released Petitioner shortly after he entered the country. *Id.* ¶ 4, Dkt. No. 17 ¶ 3. After initially living with family members in Alabama, Petitioner relocated in September 2022 to Oregon, where Petitioner lived for almost four years before his arrest and detention in April 2026. Dkt. No. 17 ¶¶ 3–4; *see* Dkt. Nos. 12-1, 12-2.

In December 2022, three months after Petitioner had relocated to Oregon, United States Immigration and Customs Enforcement ("ICE") issued Petitioner a Form I-220A "Order of Release on Recognizance" ("OREC"), which stated Petitioner had been "arrested and placed in removal proceedings," but that, "[i]n accordance with section 236 of the Immigration and Nationality Act," 8 U.S.C. § 1226, Petitioner was "released on [his] own recognizance" subject to certain conditions, including supervision and monitoring by ICE. Dkt. No. 12-1 at 2–3, Dkt. No. 11 ¶ 5.

In a sworn declaration filed with his traverse, Petitioner states that during the four years he lived in Oregon, he lawfully worked several jobs including at a factory, a laundromat, and a refrigerator assembly plant. Dkt. No. 17 ¶ 4. Petitioner also states he complied with the conditions of his release, including regularly checking in with ICE as directed—initially, every three months, and later, once a year. Dkt. No. 17 ¶ 6. The record reflects that Petitioner reported for "his routine check in appointment[s]" in Portland, Oregon. Dkt. No. 12-4 at 3.

On April 18, 2023, Petitioner was charged with misdemeanor "driving under the influence of intoxicants," namely alcohol, in Washington County, Oregon. Dkt. No. 12-3 at 2. The charge was dismissed by the state court on January 13, 2025, after Petitioner completed the requirements of a diversion program. Dkt. No. 12-3 at 6. In October 2025, Petitioner was convicted of a similar misdemeanor for driving under the influence ("DUI") in Vancouver, Washington, for which Petitioner served a one-day active sentence. Dkt. No. 11 ¶ 9; Dkt. No. 12-4 at 3; *see* Dkt. No. 16 at 2. In his declaration, Petitioner states he complied with the conditions of probation following that active sentence, including "going to treatment and to Alcohol Anonymous and wearing an alcohol monitoring device." Dkt. No. 17 ¶ 5.

The record is ambiguous regarding a third criminal incident. The declaration of United States Department of Homeland Security ("DHS") Officer Kurtis Reed states that Petitioner was

arrested for "Criminal Mischief Second Degree" in Portland, Oregon, on February 25, 2026. Dkt. No. 11 ¶ 9. While the "Criminal History" section of Form I-213 filed by the Government lists this arrest and states the "[c]ase is pending disposition" (Dkt. No. 12-4), the Government adduces no other evidence of that arrest, including whether Petitioner was charged or the nature of the allegation.

The record is unclear with respect to certain aspects of Petitioner's immigration history after his release on recognizance in 2022. Officer Reed's declaration states that "Petitioner filed an application for relief with U.S. Citizenship and Immigration Services ("USCIS")" on August 24, 2023. Dkt. No. 11 ¶ 4. However, the form I-213 contains an "Immigration History" section with only a single sentence stating, seemingly in error with respect to the date, "On August 27, 2002, MENDEZ-Prades was served NTA I-862." Dkt. No. 12-4 at 3. The only "NTA I-862" in the record is dated September 1, 2024, and states that Petitioner is a noncitizen "present in the United States who has not been admitted or paroled" and "[i]n removal proceedings under section 240 of the Immigration and Nationality Act" ("INA"), codified at 8 U.S.C. § 1229a. Dkt. No. 12-2 at 2; *see* Dkt. No. 11 ¶ 7.

On April 8, 2026, Petitioner reported for "his routine check in appointment" with ICE in Portland, Oregon. Dkt. No. 12-4 at 3; Dkt. No. 11 ¶ 11; Dkt. No. 17 ¶ 7. There, ICE arrested and detained Petitioner (*id.*) after "learn[ing] of Petitioner's DUI conviction and criminal mischief arrest during a routine record check." Dkt. No. 11 ¶ 11. ICE served Petitioner with a Form I-286 Notice of Custody Determination that identified "section 236 of the [INA]," codified at 8 U.S.C. § 1226, as the authority under which Petitioner was detained. Dkt. No. 12-6 at 2.[1] Petitioner

[1] The April 8, 2026 Form I-200 also identified 8 U.S.C. § 1226 as authorizing Petitioner's arrest. Dkt. No. 12-5 at 2.

requested that an IJ review the custody determination (*id.*, Dkt. No. 17 ¶ 8), but no such review was provided (Dkt. No. 17 ¶ 8).

On April 8, 2026, Petitioner was detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains in custody today. Dkt. No. 11 ¶¶ 11–16. On June 18, 2026, Petitioner was ordered removed to Cuba. Dkt. No. 12-7 at 2.[2] Petitioner's appeal of his removal order is pending before the BIA. Dkt. No. 4 at 3; Dkt. No. 11 ¶ 13. On August 6, 2026, Petitioner requested a bond hearing before an IJ, and at a hearing on August 20, 2026, at which Petitioner appeared *pro se*, the IJ denied Petitioner bond on the basis that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225 or, alternatively, that he is a flight risk and danger to the community. *Id.* ¶ 16, Dkt. No. 12-8.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The

[2] The Government has redacted significant portions of the removal order, such that information about Petitioner's applications for relief has been obscured.

fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner received the process appropriate to his circumstances.

**A. Petitioner Was Subject to 8 U.S.C. § 1226(a) When He Was Re-Detained.**

To determine whether Petitioner's re-detention complies with due process, the Court must first determine the statutory authority governing Petitioner's re-detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

The Government contends that Petitioner falls within the mandatory detention scheme under Section 1225(b)(2) as an applicant for admission who was initially encountered at the United States border. Dkt. No. 10 at 2, 6–7. Petitioner disagrees (Dkt. No. 4 at 3) and argues that the Government's release of petitioner on recognizance and charging of him as a noncitizen unlawfully present in the country, rather than an "arriving" noncitizen, means he is not subject to mandatory detention under Section 1225(b)(2). Dkt. No. 16 at 9–10. The Court agrees with Petitioner.

As this Court and the Ninth Circuit have ruled in countless nearly identical situations, Petitioner's status as a person previously released on recognizance, and who has been living in this country for years, counsels against the Government's expanded view of the Immigration and Nationality Act as amended. *See, e.g.*, *Rodriguez Vasquez v. Bostock*, 183 F.4th 1160, 1190, 1193 (9th Cir. 2026) (rejecting theory subjecting noncitizens present in the United States to mandatory detention regardless of the amount of time they have lived in the country, and holding that § 1226, not § 1225(b)(2), applies to "unadmitted [noncitizens] present in the interior of the country"); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden,* 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided

in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases).

Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a). Such a holding is not only consistent with the caselaw discussed above, but consistent with the Government's own treatment of Petitioner. First, Petitioner's OREC was issued under Section 1226(a). Dkt. No. 12-1. When the Government served Petitioner with an NTA on September 1, 2024, that document also stated that Petitioner was a person "present in the United States who has not been admitted or paroled" as opposed to an "arriving" noncitizen under Section 1225. Dkt. No. 12-2 at 2. Similarly, the Government's arrest warrant and NTA documents prepared contemporaneously with Petitioner's detention rely on Section 1226. Dkt. No. 12-5 at 2; Dkt. No. 12-6 at 2. In short, nothing in the record suggests the Government ever treated Petitioner as subject to Section 1225.

**B. Petitioner's Re-Detention Was Unlawful.**

Having determined that Petitioner's re-detention was under Section 1226, the Court now turns to the *Mathews* factors to determine whether Petitioner received the process appropriate to his circumstances.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner, who was released from immigration custody and lived on an order of recognizance for four years, was arrested and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty. The Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released

from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Accordingly, the first *Mathews* factor favors Petitioner.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court agrees with Petitioner that the risk of erroneous deprivation in the absence of a pre-detention hearing is high. As described earlier in this order, Petitioner was arrested when he appeared for a regularly scheduled ICE check-in appointment. Officer Reed's post-hoc declaration states Petitioner's arrest and detention was precipitated by ICE's discovery of Petitioner's October 2025 DUI conviction and January 2026 criminal mischief arrest. Dkt. No. 11 at ¶ 2-3. But the I-200 arrest warrant makes no reference to Petitioner's criminal history, nor does the custody determination, and there is no documentation reflecting the cancelation of Petitioner's OREC or the basis for it. When an order of supervision is revoked for unspecified reasons, the Court finds the risk of erroneous deprivation of liberty is high. *See, e.g.*, *Gunes v. Chestnut*, No. 1:26-cv-00080-JLT-SAB-HC, 2026 WL 218879, at *3 (E.D. Cal. Jan. 28, 2026), *R&R adopted*, 2026 WL 498432 (E.D. Cal. Feb. 23, 2026). The risk is heightened further by the Government's inconsistent or erroneous records regarding Petitioner. Accordingly, the Court finds that the second *Mathews* factor favors Petitioner. *See Doe*, 787 F. Supp. 3d at 1094.

In applying the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without process. The Court finds that the Government's interest in re-detaining without process non-citizens previously released is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the

power to take steps toward doing so; but its interest in doing so without a hearing is low."). The third *Mathews* factor thus favors Petitioner.

Accordingly, the Court finds that Petitioner's due process rights have been violated and turns to consider the appropriate remedy.

**C. A Post-Deprivation Hearing Cannot Cure the Constitutional Violation.**

As previously noted in this order, Petitioner received a bond hearing on August 20, 2026. The immigration judge found primarily that the immigration court lacks jurisdiction to set bond because Petitioner is subject to mandatory detention, and that, in the alternative, bond is denied because Petitioner is a flight risk and danger to the community. Dkt. No. 12-8.

The Government contends that "even under Section 1226(a), Petitioner remains lawfully in detention under the immigration judge's alternate finding." Dkt. No. 10 at 8. But "a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-CV-00541-AH-(MBK), 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026); *see also Riveros-Sanchez v. City of Easton*, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a predeprivation hearing was required, then no amount of postdeprivation process could cure the ... initial failure to provide a hearing."). That is because, among other things, "such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty," *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025), and "allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless." *Mendoza v. Adelanto ICE Processing Ctr. Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026). For the reasons discussed in *E.A. T.-B. v. Wamsley* and the many other such cases from courts in this circuit, the Court finds that Petitioner was entitled to pre-deprivation notice and

hearing before he was detained, and that any post-deprivation remedies he has received do not cure the constitutional violation.

## III. REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained for alleged release violations. *See, e.g.*, *Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1154 (N.D. Cal. 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

## IV. CONCLUSION

For these reasons, the Court GRANTS Petitioner's habeas petition (Dkt. No. 4). The Court further ORDERS that:

(1) Within ONE DAY of this order, Petitioner shall be released from custody on the terms of his prior OREC.

(2) Petitioner shall not be re-detained, absent urgent circumstances, without a pre-deprivation hearing at which the Government must demonstrate the justification for detention by clear and convincing evidence.

(3) The Government shall file a declaration no later than THREE DAYS from the date of this order, documenting Petitioner's release in compliance with this order.

(4) Any fee petition shall be filed within the deadlines set forth by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 29th day of September, 2026.

Kymberly K. Evanson
United States District Judge